Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE COFFMAN,<br><br>Plaintiff,<br><br>vs.<br><br>S&P GLOBAL INC., RICHARD E. THORNBURGH, MARCO ALVERA, WILLIAM J. AMELIO, WILLIAM D. GREEN, CHARLES E. HALDEMAN, JR., STEPHANIE C. HILL, REBECCA JACOBY, MONIQUE F. LEROUX, IAN PAUL LIVINGSTON, MARIA R. MORRIS, DOUGLAS L. PETERSON, EDWARD B. RUST, JR., and KURT L. SCHMOKE,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Catherine Coffman ("Plaintiff"), by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, inter alia, the investigation of counsel as to all other allegations herein, as follows:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**NATURE OF THE ACTION**

1.  Plaintiff brings this action against S&P Global Inc. ("S&P Global" or the "Company") and the members of S&P Global's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the Action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which S&P Global will merge with IHS Markit Ltd. ("IHS Markit") through S&P's wholly owned subsidiary, Sapphire Subsidiary, Ltd. ("Merger Sub") (the "Proposed Transaction").

2.  On November 30, 2020, S&P and IHS Markit jointly announced their entry into an Agreement and Plan of Merger dated November 29, 2020 (as amended January 20, 2021, the "Merger Agreement") to merge S&P with IHS Markit. Under the terms of the Merger Agreement, each IHS Markit stockholder will receive 0.2838 shares of S&P common stock for each share of IHS Markit common stock they own (the "Merger Consideration"). Upon completion of the merger, IHS Markit stockholders will own approximately 32.25% of the common stock of the combined company and S&P Global stockholders will own approximately 67.75% of the common stock of the combined company. The Proposed Transaction is valued at approximately $44.5 billion.

3.  On January 22, 2021, S&P filed a Form 424B3 Prospectus (the "Prospectus") with the SEC. The Prospectus, which recommends that S&P stockholders vote in favor of the issuance of S&P common stock to IHS Markit stockholders in connection with the Proposed Transaction (the "Share Issuance"), omits or misrepresents material information concerning, among other things: (i) IHS Markit's and S&P Global's financial projections and the data and inputs underlying the valuation analyses performed by Goldman, Sachs & Co. LLC ("Goldman"); and (ii) Goldman's potential

conflicts of interest. Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Prospectus is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction and the Share Issuance unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction and/or the Share Issuance are consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates executive offices located in this District; (ii) one or more of the defendants either resides in or maintains offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

- 3 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of S&P Global.

10. Defendant S&P is a New York corporation, with its principal executive offices located at 55 Water Street New York, New York 10041. The Company also has offices located at One California Street, 31st Floor, San Francisco, CA 94111. S&P's common stock trades on the New York Stock Exchange under the ticker symbol "SPGI."

11. Defendant Richard E. Thornburgh ("Thornburgh") has been the Company's Non-Executive Chairman since September 2020 and a director since 2011.

12. Defendant Marco Alvera ("Alvera") has been a director of the Company since 2017.

13. Defendant William J. Amelio ("Amelio") has been a director of the Company since 2019.

14. Defendant William D. Green ("Green") has been a director of the Company since 2011.

15. Defendant Charles E. Haldeman, Jr. ("Haldeman") has been a director of the Company since September 2012.

16. Defendant Stephanie C. Hill ("Hill") has been a director of the Company since 2017.

17. Defendant Rebecca Jacoby ("Jacoby") has been a director of the Company since 2014.

18. Defendant Monique F. Leroux ("Leroux") has been a director of the Company since 2016.

19. Defendant Ian Paul Livingston ("Livingston") has been a director of the Company since September 2020.

20. Defendant Maria R. Morris ("Morris") has been a director of the Company since 2016.

21. Defendant Douglas L. Peterson ("Peterson") has been President and Chief Executive Officer ("CEO") of the Company since November 2013 and a director since 2013.

22. Defendant Edward B. Rust, Jr. ("Rust") has been a director of the Company since 2001.

23. Defendant Kurt L. Schmoke ("Schmoke") has been a director of the Company since 2003.

24. Defendants identified in paragraphs 11-23 are referred to herein as the "Board" or the "Individual Defendants."

25. Non-party IHS Markit is a Bermuda corporation, with its principal executive offices located at Fourth Floor, Ropemaker Place, 25 Ropemaker Street, London England EC2Y 9LY. IHS Markit's common stock trades on the New York Stock Exchange under the ticker symbol "INFO."

26. Merger Sub is a Bermuda exempted company limited by shares and a wholly owned subsidiary of S&P.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

27. On November 30, 2020, S&P Global and IHS Markit announced:

NEW YORK and LONDON, Nov. 30, 2020 /PRNewswire/ -- S&P Global (NYSE: SPGI) and IHS Markit (NYSE: INFO) today announced they have entered into a definitive merger agreement to combine in an all-stock transaction which values IHS Markit at an enterprise value of $44 billion, including $4.8 billion of net debt. The transaction brings together two world-class organizations, a unique portfolio of highly complementary assets in attractive markets and cutting-edge innovation and technology capability to accelerate growth and enhance value creation.

Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, each share of IHS Markit common stock will be exchanged for a fixed ratio of 0.2838 shares of S&P Global common stock. Upon completion of the transaction, current S&P Global shareholders will own approximately 67.75% of the combined company on a fully diluted basis, while IHS Markit shareholders will own approximately 32.25%.

S&P Global and IHS Markit's unique and highly complementary assets will leverage cutting-edge innovation and technology capability, including Kensho and the IHS

Markit Data Lake, to enhance the customer value proposition and provide the intelligence customers need to make decisions with conviction. Serving a global customer base across financial information and services, ratings, indices, commodities and energy, and transportation and engineering, the pro forma company will provide differentiated solutions important to the workflows of many of the world's leading companies.

The transaction creates a pro forma company with increased scale, world-class products in core markets and strong joint offerings in high-growth adjacencies, including private assets, small and medium enterprises ("SME"), counterparty risk management, supply chain and trade and alternative data. Combined, the two companies will provide comprehensive solutions across data, platforms, benchmarks and analytics in ESG, climate and energy transition.

Douglas Peterson, President and Chief Executive Officer of S&P Global, will serve as CEO of the combined company. Lance Uggla, Chairman and Chief Executive Officer of IHS Markit, will stay on as a special advisor to the company for one year following closing.

"Through this exciting combination, we are able to better serve our markets and customers by creating new value and insights," said Mr. Peterson. "This merger increases scale while rounding out our combined capabilities, and accelerates and amplifies our ability to deliver customers the essential intelligence needed to make decisions with conviction. We are confident that the strengths of S&P Global and IHS Markit will enable meaningful growth and create attractive value for all stakeholders. We have been impressed by the IHS Markit team and look forward to welcoming the talented IHS Markit employees to S&P Global."

"This transaction is a win for both IHS Markit and S&P Global as we leverage our respective strengths in information, data science, research and benchmarks," said Mr. Uggla. "Our highly complementary products will deliver a broader set of offerings across multiple verticals for the benefit of our customers, employees and shareholders. Our cultures are well aligned, and the combined company will provide greater career opportunities for employees. We look forward to bringing together our teams to realize the potential of this combination."

**Strategic Rationale – Powering the Markets of the Future**

- **Greater scale and business mix**: The transaction creates a combined business with increased scale and world-class products in core market segments. The combined company will have balanced earnings across major industry segments and a resilient portfolio, providing additional financial flexibility to pursue value-creating opportunities.
- **Creates strong offerings in high-growth adjacencies**: The combined company will be differentiated in attractive high-growth adjacencies, including ESG, climate and energy transition, private assets and SME, counterparty risk management, supply chain and trade, and alternative data, which together represent $20 billion of total addressable market, growing at least 10%

annually. As part of its ongoing commitment to remain on the cutting edge of technology and innovation, the combined company will continue to deploy well above $1 billion annually on technology.

- **Increased customer value proposition**: The transaction brings together both companies' customer-first cultures and broadens their combined reach across client segments, workflows and use cases. The pro forma organization will serve diverse customer segments across financial services, corporates and governments with differentiated data and intelligence, including the potential to link and create novel insights from new data set combinations. S&P Global and IHS Markit's complementary product portfolios are expected to enable the combined company to serve new and expanded customer use cases in existing and new geographies.
- **Best-in-Class talent**: The combined company will benefit from two best-in-class workforces with deep expertise and strong, complementary cultures focused on serving the global needs of customers. As a single organization, the collective workforce will benefit from expanded opportunities for career development and growth.

**Financial Benefits – Strong Financial Profile and Outlook**

- **Enhanced growth profile**: The pro forma company will have 76% recurring revenue and expects to realize 6.5-8.0% annual organic revenue growth in 2022 and 2023, balanced across major industry segments.
- **Increased profitability**: The combined company will target 200 basis points of annual EBITA margin expansion.
- **Attractive synergy opportunities and earnings accretion**: The transaction is expected to be accretive to earnings by the end of the second full year post-closing.  The combined company expects to deliver annual run-rate cost synergies of approximately $480 million, with approximately $390 million of those expected by the end of the second year post-closing, and $350 million in run-rate revenue synergies for an expected total run-rate EBITA impact of approximately $680 million by the end of the fifth full year after closing.
- **Maintains strong balance sheet to pursue further growth**: The combined company is expected to maintain a strong balance sheet and credit profile, with pro forma annual revenue of more than $11.6 billion.  S&P Global intends to maintain a prudent and flexible capital structure and will target leverage of 2.0-2.5x EBITA, on an agency-adjusted basis.
- **Enhanced free cash flow generation to support attractive capital return**: The combined company expects to generate annual free cash flow exceeding $5 billion by 2023, with a targeted dividend payout ratio of 20-30% of adjusted diluted EPS and a targeted total capital return of at least 85% of free cash flow between dividends and share repurchases.  Both companies expect to maintain their current dividend policies until the close of the transaction.

**Management and Board**

- 7 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Following closing, the Company will be headquartered in New York with a substantial presence in key global markets across North America, Latin America, EMEA and Asia Pacific.

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the appropriate skills, knowledge and experience to oversee the company and its long-term strategic growth and performance. The combined company's Board of Directors will include the current S&P Global Board of Directors and four directors from the IHS Markit Board. Richard Thornburgh, current Chairman of S&P Global, will serve as Chairman of the combined company.

The leadership team will comprise senior leaders from both organizations. Ewout Steenbergen, Executive Vice President and Chief Financial Officer of S&P Global, will serve as Chief Financial Officer of the combined company.

The transition and integration of the combined company will be led by executives from both S&P Global and IHS Markit. The approach to integration planning will draw from the best practices of both companies to ensure continuity for customers, employees and other stakeholders.

**Timing and Approvals**

The transaction is expected to close in the second half of 2021, subject to, among other things, the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, other antitrust and regulatory approvals, and other customary closing conditions. The transaction requires the approval of shareholders of both S&P Global and IHS Markit and is not subject to any financing conditions.

***The Prospectus Contains Material Misstatements or Omissions***

28. On January 22, 2021, S&P filed the Prospectus with the SEC. The Company furnished it to stockholders to solicit their votes in favor of the Share Issuance. The Individual Defendants were obligated to carefully review the Prospectus before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Prospectus misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Share Issuance, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29. As set forth herein, the Prospectus fails to provide Company stockholders with material information or provides them with materially misleading information concerning (i) IHS

Markit's and S&P Global's financial projections and the data and inputs underlying the valuation analyses performed by Goldman; and (ii) Goldman's potential conflicts of interest.

***Material Omissions Concerning IHS Markit's and S&P Global's Financial Projections and Goldman's Financial Analyses***

30. The Prospectus omits material information regarding IHS Markit's and S&P Global's financial projections. Notably, the Prospectus fails to disclose the following:

 a. the line items underlying free cash flow for each of the S&P Global Projections for S&P Global, S&P Global Projections for IHS Markit, S&P Global Projections for the Combined Company, IHS Markit Projections for IHS Markit and IHS Markit Projections for S&P Global;

 b. the Adjusted EBITDA with respect to the S&P Global Projections for S&P Global and IHS Markit Projections for S&P Global the Prospectus.

 c. either adjusted net income or adjusted diluted EPS for the S&P Global Projections for IHS Markit; and

 d. adjusted EBITDA or adjusted net income attributable to common shareholders for the S&P Global Projections for the combined company.

31. Critical to stockholders is the Prospectus' description of Goldman's fairness opinion and the various valuation analyses performed in support of that opinion. This description, however, fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, the Company's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Share Issuance.

32. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of S&P Global, *Illustrative Discounted Cash Flow Analysis* of IHS Markit and *Illustrative Pro Forma Discounted Cash Flow Analysis,* the Prospectus fails to disclose:

a. the terminal year free cash flow Goldman used in each of the analyses; how the terminal year free cash flows were calculated;

b. how Goldman calculated terminal year cash flows;

c. Goldman's basis for using free cash flow as opposed to unlevered free cash flow to derive the terminal values;

d. the inputs and assumptions underlying the discount rates ranging from 6.0% to 6.5% that Goldman used in each of its analyses;

e. the net debt figures and the number of fully diluted outstanding shares used in each of the analyses.

33. With respect to Goldman's *Illustrative Present Value of Total Future Shareholder Value Analysis* of S&P Global, *Illustrative Present Value of Total Future Shareholder Value Analysis* of IHS Markit and *Illustrative Pro Forma Present Value of Total Future Shareholder Value Analysis*, the Prospectus fails to disclose the adjustments for interim dividends and share repurchases utilized in the analyses.

34. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of S&P Global's Financial Advisor" sections of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Potential Conflicts of Interest***

35. The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by Goldman, including exactly what benchmarks or metrics Goldman must achieve to be eligible to receive the discretionary fee. The Prospectus also fails to disclose whether the Company actually is going to pay, or even anticipates paying, that discretionary fee to Goldman.

36. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection,

and implementation of strategic alternatives.  The omission of this material information renders the statements in the "Opinion of S&P Global's Financial Advisor" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

37.   The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Prospectus.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Share Issuance, Plaintiff and the other stockholders of S&P Global will be unable to make an informed voting decision in connection with the Share Issuance and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.   Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.   Defendants issued the Prospectus with the intention of soliciting stockholder support for the Proposed Transaction, including the Share Issuance.  Each of the defendants reviewed and authorized the dissemination of the Prospectus and the use of their name in the Prospectus, which fails to provide critical information regarding, among other things, financial analysis that were prepared for and relied upon by the Board in recommending the Company's stockholders vote in

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

favor of the Share Issuance.

41. In so doing, defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Prospectus, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Prospectus. The preparation of a Prospectus by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Prospectus or failing to notice the material omissions in the Prospectus upon reviewing it, which they were required to do carefully. Indeed, defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and other financial matters.

43. The misrepresentations and omissions in the Prospectus are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Share Issuance. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of S&P Global, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of S&P Global, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Share Issuance. The Prospectus at issue contains the unanimous recommendation of the Board to approve the Share Issuance. The Individual Defendants were thus directly involved in the making of the Prospectus.

48. In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Prospectus purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of

the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Share Issuance, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the defendants to account to Plaintiff for all damages suffered because of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 24, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
     -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: 302/729-9100

*Attorneys for Plaintiff*